**Eugene HOLMES, Plaintiff,**

**Margaret Holmes, as Voluntary Administrator for Eugene Holmes (Deceased), Plaintiff,**

**and**

**Mark Holmes, Plaintiff–Appellee,**

**v.**

**UNITED STATES of America, Defendant–Appellant.**

**Nos. 810, 1045, Dockets 95–6009, 95–6103.**

United States Court of Appeals, Second Circuit.

Argued Dec. 22, 1995.

Decided June 4, 1996.

Mark Holmes, Arlington, VA, pro se.

---

Teresa E. McLaughlin, Tax Division, U.S. Dept. of Justice, Washington, DC (Loretta C. Argrett & Gary R. Allen, Tax Division, U.S. Dept. of Justice, Washington, DC, and Patrick H. NeMoyer, U.S. Attorney's Office, Western District of New York, Buffalo, NY, on the brief), for Defendant–Appellant.

Before: JACOBS and CALABRESI, Circuit Judges, and SPATT, District Judge.*

CALABRESI, Circuit Judge:

Combining the advantages of apartment occupancy with those of home ownership has long been a dream of urban dwellers. But direct ownership of "flats" has not been easily achieved. In Roman law, it may well have been forbidden; and at common law, though it was permitted, it was generally viewed as dangerously cumbersome in the absence of express statutory authorization. Nowadays, laws facilitating such "condominium" ownership have been enacted in both civil and common law lands. But long before the advent of such statutes, an alternate form of apartment ownership, the real estate stock-cooperative, had been developed in this country. Once established, it survived and continues to do so despite the flourishing of condominiums. Because the stock-cooperative was, at least in part, an attempt to accomplish by indirection what could not be done simply and straightforwardly, fitting it into the legal topography has not always been easy.[1] The case before us raises important issues of how such real-estate cooperatives are viewed by the Internal Revenue Code.

### Background

In February 1984, Mark Holmes, a young man fresh from University of Chicago Law School, signed a lease to rent apartment 5M in the St. George Tower in Brooklyn Heights for $697.70 per month. The building was soon converted into a cooperative association named the St. George Tower and Grill Owners Corporation ("Corporation").

---

* The Honorable Arthur D. Spatt, District Judge, United States District Court for the Eastern District of New York, sitting by designation.

1. *See* Leyser, *The Ownership of Flats—A Comparative Study*, 7 Int'l & Comp. L.Q. 31, 33–37 (1958); Scamell, *Legal Aspects of Flat Schemes*, 14 Current Legal Probs. 161–62 (1961); Curtis J. Berger, Land Ownership and Use 170 (1968); Curtis J. Berger, *Condominium: Shelter on a Statutory Foundation*, 63 Colum. L. Rev. 987 (1963).

As is customary in such arrangements, the cooperative association (or "co-op") owned the building, while those who owned the appropriate number of shares in the Corporation obtained thereby the right to occupy one of the apartments in that building.

In the summer of 1984, Mark Holmes and his parents, Eugene and Margaret Holmes, entered into a partnership ("the partnership") to purchase from the Corporation the shares necessary to get the right to occupy apartment 5M. Mark Holmes took a one-half interest in the partnership, and each of his parents took a one-quarter interest in it. In November 1994, the partnership simultaneously 1) bought 773 shares of the Corporation for $60,000, financed entirely by a loan from Long Island Savings Bank; 2) mortgaged the shares to Long Island Savings; 3) executed a proprietary lease with the Corporation for apartment 5M; and 4) executed a lease with Mark Holmes under which he would continue to live in apartment 5M and pay, as rent to the Partnership, $550 per month for the year ending October 1985, and $600 per month for the year ending October 1986.

In 1985, the income received by the Partnership (the rent paid by Mark Holmes) was not sufficient to meet its expenses (the maintenance fees and mortgage interest). The partnership, therefore, sustained a loss, and each partner claimed a proportionate share. Accordingly, in his tax return for the 1985 tax year, Mark Holmes deducted half of the partnership's losses, $10,136. This sum included his share of qualified mortgage interest and property taxes on the apartment (deductions that are not contested here), and one half of the remaining excess of partnership expenses over partnership income.

The IRS audited Mark Holmes and his parents and determined: 1) that the rent Mark Holmes paid was not at a fair market rate; 2) that the partnership's rental activity was not "for profit;" and 3) that, under all the circumstances, Internal Revenue Code § 280A barred the Holmeses from taking the deductions they sought. A deficiency was assessed against them.

The Holmeses paid the taxes and interest on October 9, 1988, and filed a timely administrative claim for a refund with the IRS. Mark Holmes sought a refund of $5,358.40, plus statutory interest. In October 1994, the IRS partially refunded $772 in erroneously assessed tax, plus $687.50 in interest, but otherwise denied his claim.[2] His parents received similar treatment.

The Holmes family then brought suit in district court seeking a further refund. The case was tried to a jury, which returned a verdict in favor of Mark and his parents. In answer to special interrogatories, the jury found that the partnership's rental activity was for profit and it further found that the partnership had charged a fair rent.

The Government filed a motion for judgment as a matter of law, or, in the alternative, for a new trial. The district court denied the motion. It concluded that there was ample evidence from which the jury could reasonably have found that the partnership was engaged in for-profit activity. The district court also found that the jury's verdict that a fair rent had been charged was fully supported by the evidence. *Holmes v. United States*, 868 F.Supp. 42, 44 (W.D.N.Y.1994). It held, finally, that, regardless of fair rent and for-profit activity, "Section 280A does not apply to the ownership of shares of a cooperative corporation." *Id.*

The court noted that the section limits loss deductions deriving from the rental of the taxpayer's personal "dwelling unit," and that § 280A(f)(1)(A) defines a "dwelling unit" as including "a house, apartment, condominium, mobile home, boat, or similar property, and all structures or other property appurtenant to such dwelling unit." "It would be illogical," the court stated, "to conclude that shares in or of a cooperative corporation, even though they correlate to the use of a particular apartment, were 'similar property' under the above definition." *Id.* at 44–45.

In the face of the jury verdict, the Government sought to turn defeat into victory by arguing that even if a fair rent had been charged by a "for profit" activity, Section 280A nevertheless barred or limited the de-

---

2. The record on appeal contains no explanation of why the IRS provided this partial refund.

ductions at issue on other grounds. It contended, for example, that the Holmeses had failed to establish that they had entered into a "shared equity financing agreement," within the meaning of § 280A(d)(3), and that this failure precluded the deductions under § 280A. The court, however, held that these, and other similar, government arguments had not been "presented" in the motion for a directed verdict. It therefore refused to consider them, stating that the Holmeses would be "blind-sided" if it were to entertain such theories. *Id.* at 46 n. 10.

The government, in this appeal, does not challenge the jury verdict and contests only a) whether Section 280A applies to the ownership of cooperative shares, and b) whether the government had preserved various claims arising under Section 280A that it asserts are valid despite the jury's findings. The fair rental and profit motive issues are, therefore, not before us. The government, moreover, has abandoned its claims against the parents, and attacks the judgment below only to the extent that it awards a refund to Mark Holmes ("taxpayer").

## Discussion

### I.

Since this case raises complicated technical issues of taxation, we begin by setting out the statutory scheme in some detail. Section 212 of the Internal Revenue Code permits a deduction for expenses "for the production or collection of income" or "for the management, conservation, or maintenance of property held for the production of income." In many instances, such deductions can exceed the direct income that gave rise to them. And they may then be taken, by the taxpayer, against other, unrelated income. Limits on § 212 deductions are governed by §§ 261–280H of the Code.

Among these limits are those imposed by § 280A. This section states that "[e]xcept as otherwise provided ... no deduction otherwise allowable under this chapter shall be allowed with respect to the use of a dwelling unit which is used by a taxpayer during the taxable year as a residence." The Code, as we have earlier noted, defines "dwelling unit"

as "a house, apartment, condominium, mobile home, boat, or similar property, and all structures or other property appurtenant to such dwelling unit." I.R.C. § 280A(f)(1)(A).

In general, a taxpayer uses a dwelling unit as a residence when she uses the unit "for personal purposes" for the greater of 14 days or 10 percent of the number of days the unit is rented at the fair market price during the taxable year. I.R.C. § 280A(d)(1). A unit is used "for personal purposes" on any day it is used by the taxpayer, any other person who has an interest in the unit, or any "member of the family" of the taxpayer as defined in § 267(c)(4), *i.e.,* his siblings, spouse, ancestors, and lineal descendants. I.R.C. § 280A(d)(2)(A).

Section 280A(d)(3), however, creates a safe-harbor exception to these personal use rules. A taxpayer is treated as not using a dwelling unit for personal purposes if the unit "is rented, at a fair rental, to any person for use as such person's principal residence." In other words, if two parents buy a house and rent it at a fair price to their child as that child's principal residence, these parents are not considered to be using the dwelling unit as a residence for purposes of § 280A(a).

But the "fair rental" exception is itself subject to a restriction: If the tenant "has an interest in the dwelling unit," the exception applies "only if such rental is pursuant to a shared equity financing arrangement." I.R.C. § 280A(d)(3)(B)(i). A "shared equity financing arrangement" is an agreement under which two or more persons acquire "qualified ownership interests" in a dwelling unit, and the person holding one or more of the interests is both entitled to occupy the unit and required to pay rent to one or other persons holding "qualified ownership interests" in the dwelling unit. I.R.C. § 280A(d)(3)(C). A "qualified ownership interest" is further defined in § 280A(d)(3)(D) as "an undivided interest for more than 50 years in the entire dwelling unit and appurtenant land being acquired in the transaction to which the shared equity financing agreement relates."

Another section, § 280A(c)(5), also places a cap on the amount of deductions available in some instances when a taxpayer is subject to

§ 280A. In relevant part, it is linked to the personal use of a dwelling unit, and it limits deductions to the excess of the gross income derived from the rental over the deductions allocable to the rental that would be allowable whether or not it was rented (such as qualified mortgage interest and property taxes). In other words, the expenses attributable to the rental of a taxpayer's dwelling are limited to the rental income, less the deductions that are allowed without regard to the business use of the premises (such as interest and taxes). Any further rental loss cannot be offset against unrelated income.

## II.

■ The first question in this case is whether the district court erred by construing Section 280A as not restricting deductions of expenses incurred from the ownership of cooperative shares. If the court was correct, the taxpayer wins regardless of whether the rent was fair, or whether any of the other arguments made by the government apply. The issue was raised by the district court when it denied the government's motion for judgment notwithstanding the verdict, and so we review the court's decision *de novo*. *Fiataruolo v. United States*, 8 F.3d 930, 938 (2d Cir.1993).

The government maintains that a co-op is a "dwelling unit" under Section 280A, even though the text of § 280A does not specifically include co-ops. As with many other provisions in the Code, however, the statutory text contains open-ended terms to which courts must give meaning. In the case of § 280A, the government contends that "dwelling unit" and "similar property" are exactly such open-ended terms and are intended to cover co-ops. On its face, the argument is appealing. A co-op appears to be quite comparable to the properties specifically covered in § 280A(f)(1)(A) ("house, apartment, condominium, mobile home, boat, ... and all structures or other property appurtenant to such dwelling unit").

The taxpayer argues, however, that a co-op cannot be a "dwelling unit" or "similar property" because one cannot inhabit shares in a corporation and that shares are not "similar" to real estate. But this argument is far too formalistic. The shares in the corporation confer the right to occupy an apartment. And, under the Code, they also grant the shareholder many other rights that are typically available only to owners of real property. Thus, the Code specifically provides that stock in a cooperative housing corporation can be defined as a principal residence for the purpose of rolling over capital gains on its sale, § 1034(f), as well as for the purpose of obtaining nonrecognition of $125,000 in capital gains on the sale of a principal residence by a taxpayer over age 55, § 121(d)(3).

Section 216 of the Code, moreover, permits a tenant-stockholder in a "cooperative housing corporation" to deduct amounts paid to the corporation to the extent that such amounts represent the proportionate share of real estate taxes and mortgage interest allowable as a deduction to the corporation. And Section 216(b)(1)(B) defines a "cooperative housing corporation" as one where each of the stockholders is entitled by reason of his ownership of stock "to occupy *for dwelling purposes* a house, or an apartment in a building, owned or leased by such corporation." (Emphasis added.) Thus, the Code permits shareholders to deduct mortgage interest, real estate taxes, and depreciation by virtue of the fact that the shares convey the right to occupy a "dwelling." Needless to say, the taxpayer in this case took these deductions under § 216—implicitly confirming that his stock conferred the right to "occupy [the apartment] for dwelling purposes."

The taxpayer argues, and the district court found, however, that at one time co-ops were treated differently from other forms of real property. The taxpayer is correct that in early cases, some courts denied deductions to tenants who were stockholders in co-ops when deductions were sought for the proportionate share of the interest and real estate taxes paid by the corporations. *See, e.g., Wood v. Rasquin*, 21 F.Supp. 211, 213 (E.D.N.Y.1937), *aff'd without op.*, 97 F.2d 1023 (2d Cir.1938); *Holden v. Commissioner*, 27 B.T.A. 530, 538, 1933 WL 188 (1933). It was in response to these cases that Congress enacted Section 216, which explicitly permits tenant-stockholders to deduct their share of

these expenses. Relying on these cases, the district court reached the conclusion that, as a general matter, the Code treats co-ops differently from apartments and other real property, and that the two are treated in the same way only when there is an *explicit* statement in the Code. *Holmes,* 868 F.Supp. at 45–46. The court then noted that no such explicit language exists in § 280A, and therefore ruled for the taxpayer.

■ But, in fact, the court below overlooked the crucial factual posture of these early cases. These were all cases in which taxpayers sought *deductions* for expenses related to co-ops, even though no specific Code provision expressly authorized such deductions. The cases were therefore subject to the general presumption that vagueness in the Code must be read against deductions.[3] *Wood* and its progeny simply interpreted the statutory provisions in accordance with this presumption. They certainly did not hold that co-ops were fundamentally different from other forms of property. And Congress quickly made clear, by enacting § 216 and by granting co-op owners the same deductions as other holders of real property, that the underlying similarity was in fact present and justified.

■ Under the circumstances, we see no reason to distinguish, for purposes of § 280A, between ownership of co-op shares that confer a right of occupancy, and ownership by title. The very purpose of the section was to prevent a taxpayer from deducting expenses associated with the normal maintenance of his own dwelling unit. This is exactly what the taxpayer here seeks to do. We therefore reverse the district court's decision insofar as it held that "section 280A does not apply" to limit deductible losses from "the ownership of shares of a cooperative corporation." *Holmes,* 868 F.Supp. at 45.

### III.

■ Having decided that § 280A applies to co-op shares, we must now determine whether the deduction limitations of § 280A apply in this particular instance. The government litigated this case by making its argument in two steps. First, it contended that § 280A applies to co-ops. Second, it argued that the taxpayer was not protected by the fair rental exception to § 280A because a fair market rent was not charged for apartment 5M.[4] On the second issue, the jury determined that a fair market rent was charged. And the government has declined to appeal that determination. Accordingly, the government is left in the position of arguing that, despite the fact that a fair market rent was charged, the taxpayer's co-op arrangement is, nevertheless, subject to the deduction limits imposed by § 280A.

The government attempted to raise various arguments in the post-judgment district court proceeding, all of which sought to show that, under the Code, § 280A applied in this case, even though a fair rental had been charged. The court below refused to consider any of the government's contentions, however, because "they were not presented in the defendant's FRCvP 50(a) motion and thus were not properly preserved." *Holmes,* 868 F.Supp. at 46. On this alternate ground, the district court ruled that the taxpayer would win even if the court's determination (that § 280A did not apply to cooperative shares) were deemed erroneous. Because we have in fact found the court's interpretation of § 280A to be incorrect, it is to its alternate holding that we must next turn.

Federal Rule of Civil Procedure 50(a) specifies the procedures for making a motion for "judgment as a matter of law." The motion is made during the trial, and after "a party has been fully heard on an issue and there is

---

3. It is a common principle of taxation that where doubt exists, courts should resolve deductions in favor of the government: "Whether and to what extent deductions shall be allowed depends upon legislative grace; and only as there is clear provision therefor can any particular deduction be allowed." *New Colonial Ice Co. v. Helvering,* 292 U.S. 435, 440, 54 S.Ct. 788, 790, 78 L.Ed. 1348 (1934).

4. In its written Pretrial Statement, the Government described the two issues of law as: 1) whether Mark Holmes was paying fair market rent, and 2) whether the activity was engaged in for profit. **Pretrial Statement of the United States of America at 4.** There was no mention of any other theory of tax liability in its statement.

no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed.R.Civ.P. 50(a)(1). A Rule 50(a) motion "shall specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment." Fed.R.Civ.P. 50(a)(2). It must be made "before the submission of the case to the jury," *id.*, and, if rejected, may be renewed after the jury verdict.

■ Rule 50(b) governs the procedure for renewing such a motion for judgment as a matter of law. A Rule 50(b) motion can be made after the jury verdict, but only if a Rule 50(a) motion was made prior to the close of the evidence. Together, Rules 50(a) and (b) "limit the grounds for judgment n.o.v. to those specifically raised in the prior motion for a directed verdict." *Lambert v. Genesee Hosp.*, 10 F.3d 46, 54 (2d Cir.1993) (quoting *Samuels v. Air Transp. Local 504*, 992 F.2d 12, 14 (2d Cir.1993)), *cert. denied*, —— U.S. ——, 114 S.Ct. 1612, 128 L.Ed.2d 339 (1994). *See also* Fed.R.Civ.P. 50(b), Notes of Advisory Committee to 1991 Amendment ("A post-trial motion for judgment can be granted only on grounds advanced in the pre-verdict motion.").

We have previously stated that "the specificity requirement is obligatory" and that its purpose is to "ensure[ ] that the other party is made aware of any deficiencies in proof that may have been overlooked." *Lambert*, 10 F.3d at 54 (citing Fed.R.Civ.P. 50(b), Notes of Advisory Committee to 1991 Amendment). Requiring a party to state specific grounds for its Rule 50(a) motion "put[s] a party on notice of potential deficiencies in its proof before the case is submitted to the jury." *Id.*[5]

The government's Rule 50(a) motion was made at the close of the Holmeses's case. In its oral motion, the government identified two grounds on which it was entitled to judgment as a matter of law. First, it argued that the partnership was not engaged in an activity "for profit" because it did not charge Mark Holmes "fair rent," and therefore that the partners were not entitled to

deductions for costs associated with that activity. Tr., Aug. 24, 1993, at 110–18. Second, the government contended that, even if the partnership charged fair rent, the partnership could deduct rental-related expenses under § 280A only to the extent of the income derived from the rental activity. It stated, with singular inelegance, that:

> The second issue is 280A, and that is the section where if it's a dwelling unit used as a residence for personal purposes at a below market rental, which this was in our opinion, there are limitations on what the person can do, and he can only offset the income from that activity with his deductions and any excess is not an allowable loss, whether fair market or not. So, even if Mr. Holmes paid fair rental or fair market rental, Mr. Holmes or his family can only get an offset equal to the income derived from that activity and any excess would not be allowed as a loss.

Tr., Aug. 24, 1993, at 118. The government's motion was denied.

At the close of all the evidence, the government renewed its motion:

> At this time, the United States would like to renew its Rule 50 motion based upon all of the grounds as we cited and the testimony recently elicited.

Tr., Aug. 25, 1993, at 216.

During the charging conference, the government specified that because Mark Holmes used the apartment for personal purposes, § 280A(c)(5) limited the partnership's deductions to the gross income from the apartment, regardless of whether fair rent was charged. Tr., Aug. 24, 1993, at 228. At the same time, the government mentioned, in general terms, proposed Treasury regulations, *id.* at 231–32, but it did not explain their applicability.

In this appeal, the government makes essentially two arguments. First, it claims that the taxpayer had an "interest" in the unit under § 280A(d)(3)(A) because he was a member of the partnership that held the shares in the cooperative corporation, and

---

**5.** *See Samuels,* 992 F.2d at 15 ("The moving party must set forth a statement of the specific grounds it relies on for the relief sought.").

that, therefore, he could not deduct losses unless he could prove that rental of the unit was pursuant to a "shared equity financing agreement." Second, it argues that the taxpayer's use of the dwelling unit for personal purposes places him within the ambit of § 280A(c)(5), regardless of whether a fair rent was charged.

The government clearly did not preserve its argument that, under § 280A(d)(3), the taxpayer cannot deduct losses unless he can show that the rental was pursuant to a "shared equity financing agreement." This issue was not mentioned in the government's Rule 50(a) motion. Nor did the government say anything, at that time, about the taxpayer's interest in the partnership that "owned" the dwelling unit. We therefore have no occasion to rule on this § 280A(d)(3) claim. *See Cruz v. Local Union No. 3*, 34 F.3d 1148, 1155 (2d Cir.1994) ("[I]f an issue is not raised in a previous motion for a directed verdict, a Rule 50(b) motion should not be granted unless it is 'required to prevent manifest injustice.'") (citation omitted). The district court correctly held that this argument was not preserved, *see Holmes*, 868 F.Supp. at 46 & n. 10, and we affirm its holding.

■ The question of whether the government preserved its contention that § 280A(c)(5) limits the taxpayer's deductions irrespective of fair rent is, however, more complicated. Although the government did not cite the relevant statutory provision in its

Rule 50(a) motion, its argument, that "where if its a dwelling unit used as a residence for personal purposes" the taxpayer "can only offset the income ... and any excess is not an allowable loss, whether fair market or not," may have relied on the terms of § 280A(c)(5).

The issue is not only a close one, it is one that the district court did not address specifically. It may, moreover, depend on the context in which the government made the Rule 50(a) motion, and on what the taxpayer could reasonably understand from that context.

The underlying question of the effect of § 280A(c)(5) on the availability of the deductions sought by this taxpayer is also anything but clear. The parties neither fully briefed nor argued it before us. And it was not discussed at all by the district court.

■ Under the circumstances, we decline to address the § 280A(c)(5) issue now, since it may be improvident to do so (the ultimate merits may never be reached due to inadequate preservation) and since we lack adequate input from the parties and the district court.[6] Accordingly, we remand the case to the district court for consideration of whatever further arguments it deems appropriate to decide: a) whether the § 280(A)(c)(5) issue was preserved, and b) the significance of § 280(A)(c)(5) to this case if the question was in fact preserved.[7]

**6.** The government, on appeal, makes much of Proposed Treasury Regulation § 1.280A–1(e)(5), and argues that, under this regulation, a partner making personal use of a dwelling unit held by her partnership is subject to the limitations in § 280A(c)(5). The government, in the charging conference, mentioned "proposed regulations," but this broad mention of regulations long after the original Rule 50(a) motion and without any specificity, is not, by itself, enough to preserve any issue.

If, on remand, the district court finds that some part of the subsection (c)(5) issue is preserved, and the proposed regulation is helpful to the government on the merits of whatever part of the (c)(5) claim survives, it may be that the government could be permitted to rely on the proposed regulation to bolster its argument. The government may not use the proposed regulation, however, in an attempt to resurrect its contentions under subsection (d)(3). That argument was not preserved. We express no opinion

concerning the force or meaning of the proposed regulation with regard to subsection (c)(5).

**7.** The government has also asked us to remand this case so that the district court may decide whether the taxpayer should be subject to negligence penalties. This we will not do. The government may, or may not, ultimately win on the § 280A(c)(5) argument. But the taxpayer's actions, and the arguments he has made in this case, in no way suggest negligence. Negligence under § 6653 of the Code is the lack of due care or the failure to do what a reasonable and prudent person would do under similar circumstances. *Allen v. Commissioner*, 925 F.2d 348, 353 (9th Cir.1991). It is obvious to us, as it should have been to the government, that the taxpayer in this case did not act negligently. One may disagree, as we did, with the taxpayer on whether or not § 280A applies to cooperative stock, but the government's bald claim that the taxpayer did not exercise due care in making his argument is little short of reprehensible. And its

### Conclusion

We reverse the district court's decision that § 280A of the Internal Revenue Code does not apply to deductible losses from the ownership of cooperative shares. We affirm the district court's conclusion that the government is precluded from arguing that, even though a fair rent was charged, § 280A(d)(3)(A) makes § 280A applicable in this case. And we remand to the district court for a determination of whether the government preserved its claim that § 280A(c)(5) limits the taxpayer's deductions irrespective of fair rent, as well as the merits of that contention if it was, in fact, properly preserved.

persistence in asserting the negligence claim even after it lost below is mind boggling. Both bespeak of bullying tactics employed against someone who did no more than exercise his right to question the government's chosen reading of the tax laws. We therefore not only reject the claim of negligence in this case, but caution the government against making like claims in similar situations where the law is, at best, unclear.