**ANCHOR FISH CORP., a New York Corporation, Plaintiff–Appellee,**

v.

**TORRY HARRIS, INC., a New Jersey Corporation, Defendant–Appellant,**

**and**

**Torry Harris Foods Pvt, Ltd., a foreign corporation, Defendant.**

**No. 78, Docket 96–9524.**

United States Court of Appeals, Second Circuit.

Argued Sept. 10, 1997.

Decided Feb. 3, 1998.

---

Richard A. Dubi, Mitchel Field, NY, for plaintiff-appellee.

Russell K. Statman, New York City, for defendant-appellant.

Before WINTER, Chief Judge, NEWMAN, Circuit Judge, and CEDARBAUM, District Judge.[1]

CEDARBAUM, District Judge:

This is an action for breach of contract that arises from the shipment by Torry Harris, Inc. to Anchor Fish Corp. of 36,000 pounds of frozen squid.

Prior to the disputed shipment, the parties had established a course of dealing by which Torry Harris sold frozen Loligo squid to Anchor Fish. On August 4, 1994, Anchor Fish received the disputed shipment. There was testimony that approximately two and one-half weeks later, Anchor Fish defrosted the entire shipment and discovered that it contained a portion of Illex squid and was significantly spoiled. Anchor Fish deemed the shipment unfit for human consumption and immediately repackaged and refroze it. By a letter dated September 14, 1994, Anchor Fish advised Torry Harris that it rejected the shipment. After various communications with Torry Harris unsuccessfully seeking to resolve the issue, Anchor Fish defrosted the squid, processed it, and sold it for scrap.

---

1. Honorable Miriam Goldman Cedarbaum, of the United States District Court for the Southern District of New York, sitting by designation.

At a consent trial before a magistrate judge (Pohorelsky, J.), the questions submitted to the jury were whether the quality of the squid conformed to the parties' agreement; whether Anchor Fish had effectively rejected the squid, or, alternatively, had effectively revoked its acceptance of the squid; and, damages.

The jury found that Anchor Fish had accepted the shipment of squid, but had subsequently revoked its acceptance, and the jury held Torry Harris liable for Anchor Fish's expenses in storing and processing the squid. On appeal, Torry Harris attacks the sufficiency of the evidence of damages. In addition, Torry Harris attacks the jury finding of revocation on a variety of grounds, none of which was preserved for appellate review.

### 1. *Damages*

■ Anchor Fish's principal, Roy Tuccillo, had first-hand knowledge of Anchor Fish's operations in general, and of the processing of the disputed squid in particular. Tuccillo testified that Anchor Fish sustained damages, in the form of processing costs, of $.50 per pound of squid.[2] Anchor Fish mitigated these damages by selling the squid for scrap.

This unimpeached evidence was legally sufficient to support the jury's determination that Anchor Fish had spent $18,000 dollars out-of-pocket to process the squid. *See U.S. ex rel. Evergreen Pipeline Construction Co. v. Merritt Meridian Construction Corp.*, 95 F.3d 153, 169 (2d Cir.1996) ("Any lack of detail as to the amount of damages could have been explored on cross examination and goes to the weight of the evidence, not the existence of evidence").

### 2. *Revocation*

Torry Harris' remaining contentions relate to the magistrate judge's charge on revocation, and to the jury's finding that Anchor Fish revoked its acceptance of the squid. Torry Harris contends that the charge constituted an unlawful amendment of Anchor Fish's complaint and resulted in a legally insufficient verdict. In addition, Torry Harris argues that the trial court erred in not instructing the jury that a time limitation clause in Torry Harris' invoices was part of the contract (Appellant Br. at 17–28).

■ Prior to the discharge of the jury, Torry Harris did not argue that the charge unlawfully permitted Anchor Fish to amend its pleadings, and did not move for a directed verdict on the issue of revocation. Since Torry Harris has not made a showing of manifest injustice or an extraordinary need for us to consider these matters on appeal, we decline to reach these unpreserved issues. *See Amalgamated Clothing and Textile Workers Union v. Wal–Mart Stores, Inc.*, 54 F.3d 69, 73 (2d Cir.1995); *see also Simms v. Village of Albion, N.Y.*, 115 F.3d 1098, 1109 (2d Cir.1997) (absent objection, error may be pursued on appeal only if it is plain error that may result in a miscarriage of justice, or in obvious instances of misapplied law).

■ More than ten days after the discharge of the jury, for the first time, Torry Harris challenged the sufficiency of the evidence of revocation. That post-verdict motion for judgment as a matter of law did not preserve the issue for our review. *See Holmes v. U.S.*, 85 F.3d 956, 962 (2d Cir. 1996) (holding that Rule 50(a) and (b) limits post-verdict motion for judgment as a matter of law to grounds "specifically raised" in pre-verdict motion).

■ Anchor Fish did not challenge Torry Harris' post-verdict arguments as unpreserved. This omission by Anchor Fish could waive that procedural defense on appeal. *See Gibeau v. Nellis*, 18 F.3d 107, 109 (2d Cir.1994) (because appellees did not assert that appellant's post-verdict motion for judgment as a matter of law was unpreserved, appellees could not raise a preservation defense on appeal unless necessary to serve the interest of justice). In this case, however, Anchor Fish's omission does not reopen the

---

**2.** The transcript's indication that the cost was $.40 per pound is apparently an error in transcription. The magistrate judge's denial of Torry Harris' post-verdict motion for judgment as a matter of law states that Tuccillo testified that the cost of processing was $.50 per pound of squid. Moreover, Torry Harris has never contended that the jury miscalculated the damages, but argues that Tuccillo's testimony was insufficient to establish any damages.

sufficiency of the evidence issue because Torry Harris invited the precise verdict that it now attacks.

At the charge conference, the magistrate judge specifically questioned Anchor Fish about the appropriateness of giving a revocation charge. The magistrate judge was "not sure that it works on the facts here.... What's the theory about that you revoked acceptance?" Anchor Fish asked for time to formulate its theory, and Torry Harris made no objection. The record does not disclose any further discussion on the matter, but when the magistrate judge subsequently showed the parties his proposed verdict form, it contained revocation as an alternative to rejection. Torry Harris approved both the verdict form and the subsequent charge which presented revocation as an alternative theory to be considered if the jury first found no effective rejection. The issue arose again when, during its deliberations, the jury sent a note asking for a definition of effective revocation. In response, Torry Harris agreed that the proper course was simply to re-read the original revocation charge. Never did Torry Harris respond to the magistrate judge's question as to whether the facts could support a finding of revocation.

Torry Harris' waiver in this case goes far beyond a mere failure to object to the sufficiency of the evidence. To now review Torry Harris' contentions would undermine orderly trial procedure and defeat the interest of justice. *Cf. van Nijenhoff v. Bantry Transportation Co.*, 791 F.2d 26, 28 (2d Cir.1986) (appellant cannot be permitted to try case anew on theory steadfastly avoided until after the verdict, where appellant's trial position "open[ed] the way" for the result subsequently complained of).

■ The final issue on appeal, the magistrate judge's charge with respect to the invoices, is also unpreserved. Torry Harris contends that the magistrate judge erred in failing to instruct the jury that the contract included a time limitation clause that required Anchor Fish to revoke its acceptance of the squid within fourteen days (Appellant Br. at 24–26). Following the disputed shipment of squid, Torry Harris delivered two invoices to Anchor Fish. On each of these invoices was stamped, "Any claim, deduction, or return against this invoice must be given written notice within 14 days. Failure to do this will make you fully liable for the full value and any collection charges." Anchor Fish received the disputed shipment on August 4, 1994, and the invoices were dated August 11, 1994. Additionally, Torry Harris had included the same time limitation clause in the prior invoices sent to Anchor Fish in connection with each of its six prior shipments to Anchor Fish.[3]

According to Torry Harris, under the principle of the "battle of the forms," the jury should have been instructed that the time limitation clause became part of the sales contract when Anchor Fish failed to object to its inclusion in the invoices within a reasonable period of time. *See* N.Y.U.C.C. § 2–207 (setting forth conditions under which "written confirmation" may become part of a sales contract).

We decline to reach this issue because it was not properly preserved. Since it was undisputed that Anchor Fish had neither rejected nor revoked within fourteen days, if the time limitation clause were part of the contract, Torry Harris was entitled to judgment as a matter of law; there would have been no need for a charge at all. *Cf., e.g., Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 24 (2d Cir.1995) (indicating that district court properly granted partial motion for summary judgment after determining "battle of forms" question in favor of moving party); *S & H Building Material Corp. v. Riven*, 176 A.D.2d 715, 716–17, 574 N.Y.S.2d 798, 799–800 (N.Y.App. Div., 2d Dept., 1991) (where there was no material dispute of fact, but rather where it was clear that buyer of goods had failed to reject or to revoke acceptance within the time limit provided by contract, trial court erred in not granting seller's motion for summary judgment).

---

**3.** Neither party has argued what event would trigger the fourteen day period of limitation. Similarly, there is no evidence as to precisely when Anchor Fish received any of the invoices. In light of the remainder of this opinion, these issues need not be reached.

Indeed, Torry Harris now argues that it was entitled to judgment as a matter of law (Appellant Br. 25). Having failed to move for judgment as a matter of law on this issue below, Torry Harris cannot gain relief on this ground now. *See Holmes,* 85 F.3d at 962–63 (claim that party is entitled to judgment as a matter of law must be preserved with specificity).

Even viewing Torry Harris' objection to the magistrate judge's charge on the time limitation clause in isolation, this objection did not provide the magistrate judge with the opportunity to identify and cure the error, if any. Torry Harris used battle of the forms terminology interchangeably with course of dealing terminology without ever explaining how the two principles related to the facts of the case and to the particular charge Torry Harris wanted. For example, Torry Harris argued, "That is the UCC battle of the forms the way they taught it to me in law school.... They established a course of dealing.... [T]here is a course of dealing, [that] is incorporated into this contract." Indeed, when the magistrate judge, understandably confused by Torry Harris' arguments, stated, "I do have a line about course of dealing," Torry Harris responded, "I understand that. But there is a specific provision, 2–207 in the UCC, to tell the jury what it says." *See* Fed.R.Civ.P. 51 (objection to jury instructions must "distinctly" state the matter objected to and the grounds of the objection); *Metromedia Co. v. Fugazy,* 983 F.2d 350, 363 (2d Cir.1992) (purpose of Rule 51 is to give the trial court an adequate opportunity to cure any error before deliberations begin), *cert. denied,* 508 U.S. 952, 113 S.Ct. 2445, 124 L.Ed.2d 662 (1993).

Given Torry Harris' inconsistent positions below, and its confusion between the battle of the forms and course of dealing issues, the most reasonable approach was to instruct the jury that the parties' course of dealing could create an agreement which rendered the time limitation clause part of the contract. Under these circumstances, the magistrate judge correctly instructed the jury that it could determine, as a matter of fact, that the course of dealing led to a common understanding between the parties about the time limitation clause on the invoices. *Cf. New Moon Shipping Co. v. MAN B & W Diesel AG,* 121 F.3d 24, 30–32 (2d Cir.1997) (unobjected to terms repeated in a number of written confirmations may, over time, become part of later contracts; however, an indication of the common understanding of the parties must exist to permit the inference that the parties agreed to the terms, and the existence of such understanding based upon a prior course of dealings is a question of fact) (analyzing *Pervel Industries, Inc. v. T M Wallcovering, Inc.,* 871 F.2d 7, 8 (2d Cir. 1989)).

For the foregoing reasons, the judgment appealed from is affirmed.