11-2364-ag
Alphonso v. C.I.R.

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

- - - - - -

August Term, 2011

(Argued:  February 29, 2012          Decided:    February 6, 2013)

Docket No. 11-2364-ag

_____

CHRISTINA A. ALPHONSO,

Petitioner-Appellant,

- v. -

COMMISSIONER OF INTERNAL REVENUE,

Respondent-Appellee.

_____

Before:  KEARSE, WALKER, and LYNCH, Circuit Judges.

Appeal from a decision of the United States Tax Court, Carolyn P. Chiechi, Judge,

granting summary judgment in favor of respondent, disallowing casualty loss deduction, see 26 U.S.C.

§ 165(c)(3), on the ground that petitioner lacked a sufficient interest in the damaged property.  See

136 T.C. 247 (2011).

Vacated and remanded.

ERIC B. LEVINE, New York, New York (Charles H. Baller, Stephen
H. Orel, Wolf  Haldenstein Adler Freeman & Herz, New York, New
York, on the brief), for Petitioner-Appellant.

MARION E.M. ERICKSON, Tax Division, Department of Justice, Washington, D.C. (Tamara W. Ashford, Deputy Assistant Attorney General, Michael J. Haungs, Attorney, Tax Division, Department of Justice, Washington, D.C., on the brief), for Respondent-Appellee.

KEARSE, Circuit Judge:

Petitioner Christina A. Alphonso, a tenant-stockholder of a cooperative housing corporation, appeals from a decision of the United States Tax Court, Carolyn P. Chiechi, Judge, denying her petition for a redetermination of a deficiency determination by the Commissioner of Internal Revenue ("Commissioner") based on his rejection of Alphonso's claim of a casualty loss deduction for her share of the cost of repairs associated with the collapse of a retaining wall on the cooperative's property. The tax court granted the Commissioner's motion for summary judgment, ruling that Alphonso held no property interest in the cooperative's grounds sufficient to entitle her to the claimed deduction. On appeal, Alphonso contends that her right to use the grounds and to exclude persons who are not tenants or the guests of tenants, coupled with her obligations as a tenant-stockholder under the cooperative lease, constituted a property interest in the land sufficient to entitle her to the claimed deduction. For the reasons that follow, we conclude that Alphonso had a sufficient property interest, and we remand for further proceedings to permit the tax court to address the other ground asserted by the Commissioner for the deficiency determination.

I. BACKGROUND

Alphonso is a tenant-stockholder of Castle Village Owners Corp. ("Castle Village"), a New York cooperative housing corporation (or "co-op"), as defined in § 216(b) of the Internal Revenue Code ("I.R.C." or "Code"). Castle Village owns a tract of land in Manhattan on which several high-rise residential buildings have been erected (collectively, the "complex").

A. The Collapse of the Wall

The observable events leading to this litigation are not in dispute and are set out in the tax court's opinion, reported at 136 T.C. 247 (2011), as follows:

The Castle Village complex included a retaining wall (Castle Village retaining wall) that Castle Village owned. That retaining wall, which was approximately 70 feet high and approximately 250 feet wide, separated the Castle Village complex from certain public roads approximately 65 feet below that complex.

On May 12, 2005, the Castle Village retaining wall collapsed, causing rocks and soil to fall onto the public roads below the Castle Village complex. The collapse of that retaining wall caused significant damage.

Castle Village levied an assessment against each of its stockholders, including petitioner, with respect to the damage caused by the collapse of the Castle Village retaining wall. The assessment that Castle Village levied against petitioner was $26,390 (Castle Village assessment), which she paid.

136 T.C. at 253.

In her 2005 income tax return, Alphonso listed a casualty loss of $26,390, and after making reductions required by § 165(h)(1) and (2) of the Code, she claimed a casualty loss deduction of $23,188. Alphonso is one of approximately 200 Castle Village tenant-stockholders who have claimed a casualty loss deduction on their respective income tax returns as a result of Castle Village assessments on them for their respective shares of the costs associated with repair of the retaining wall.

The Commissioner disallowed Alphonso's deduction and assessed a deficiency of $3,059, stating as follows:

The loss does not qualify as a casualty loss under section 165(c)(3) of the Internal Revenue Code . . . . A loss from a casualty arises from an event due

3

to some sudden, unexpected or unusual cause. Damages caused from gradual erosion or inundation is not a casualty loss. The cause of the collapse of the Castle Village Retainer Wall was determined to be the result of a gradual weakening of the wall.

(Internal Revenue Service Notice of Deficiency dated April 23, 2008.)

B. Proceedings in the Tax Court

Alphonso filed a petition in the tax court for a redetermination to eliminate the deficiency assessment on the ground that she was entitled to the claimed casualty loss deduction. The Commissioner filed a six-paragraph answer that, in general, simply denied Alphonso's entitlement; he later filed an amended answer in which he added the contention that Alphonso was not entitled to the claimed deduction because "the collapse occurred on Castle Village property," and thus "any casualty loss deduction must be claimed by the corporation, and not by the stockholders" (Amended Answer ¶ 15; see id. ¶¶ 7-14, 16).

Reserving the right to pursue his original contention that the collapse of the retaining wall did not qualify as a casualty within the meaning of § 165(c)(3), the Commissioner moved for summary judgment solely on the ground that Alphonso was not entitled to the deduction because the land was owned by Castle Village. (See Commissioner's Motion for Summary Judgment ("Motion") at 6 n.4 (stating that if the court agreed, it need not reach the Commissioner's original basis for disallowing the deduction).) The Commissioner argued that although Alphonso "had the ability to use common areas of Castle Village, . . . at no point did she have an ownership interest in Castle Village property beyond the proprietary lease she received as a shareholder of Castle Village." (Id. at 7-8.) He argued that deductions are allowed only as Congress has specifically provided; and that

4

while Congress provided in § 216(a) of the Code that tenant-stockholders of a cooperative housing corporation may take deductions for their respective shares of the real estate taxes and mortgage interest expense associated with the property owned by the corporation, that section did not state that tenant-stockholders could take a deduction under § 165(c)(3) for the corporation's casualty losses. (See Motion at 9-10.)

In opposition to the motion, Alphonso submitted, inter alia, the Castle Village form proprietary lease ("Proprietary Lease"), "[which] the parties do not dispute is materially identical to the proprietary lease that petitioner and Castle Village executed," 136 T.C. at 248 n.3. She also submitted copies of the Castle Village certificate of incorporation, bylaws, and house rules. The Proprietary Lease states that Castle Village, as "Lessor," is "the owner of the land and the buildings erected thereon"; specifies the number of corporate shares owned by the "Lessee" ("co-op shares"); and states that Castle Village leases to the Lessee a designated apartment, which is allocated to the apartment's occupant "exclusively." (Proprietary Lease at 1.) The Proprietary Lease also provides in part as follows:

> 1. (a) The rent (sometimes called maintenance) payable by the Lessee for each year, or portion of a year, during the term shall equal that proportion of the Lessor's cash requirements for such year, or portion of a year, which the number of shares of Lessor allocated to the apartment bears to the total number of shares of the Lessor issued and outstanding on the date of the determination of such cash requirements. Such maintenance shall be payable in equal monthly installments in advance on the first day of each month, unless the Board of Directors of the Lessor (hereinafter called Directors) at the time of its determination of the cash requirements shall otherwise direct. The Lessee shall also pay such additional rent as may be provided for herein when due.

> . . . .

> (c) Whenever used herein the term "cash requirements" shall mean the estimated amount in cash which the Directors shall from time to time in their

judgment determine to be necessary or proper for (1) the operation, maintenance, care, alteration and improvement of the corporate property during the year or portion of the year for which such determination is made; (2) the creation of such reserve for contingencies as they may deem proper; and (3) the payment of any obligations, liabilities or expenses incurred or to be incurred, after giving consideration to (i) income expected to be received during such period (other than rent from proprietary lessees), and (ii) cash on hand which the Directors in their discretion may choose to apply. The Directors may from time to time modify their prior determination and increase or diminish the amount previously determined as cash requirements of the corporation for a year or portion thereof. No determination of cash requirements shall have any retroactive effect on the amount of the rent payable by the Lessee for any period prior to the date of such determination. All determinations of cash requirements shall be conclusive as to all lessees.

(Proprietary Lease at 1-2 (emphases added).)

Appended to the Proprietary Lease are "House Rules" (id. at 8), which may be amended from time to time by the Board of Directors as "deem[ed] necessary in respect to the apartment building of the Corporation for the health, safety and convenience of the shareholder-tenants" (Castle Village By-Laws, art. III, sec. 8). The Proprietary Lease is "subject to such House Rules"; and "when a copy" of those rules "has been furnished to the Lessee," the House Rules are deemed "part []of [the Proprietary Lease]." (Proprietary Lease at 8.) As set forth in Castle Village's 2003 handbook, the House Rules provide, inter alia, that "[t]he grounds of Castle Village include beautifully landscaped gardens and a children's playground. Use of these areas is limited to building residents and their guests." (Handbook at 14 (emphasis added).)

Alphonso argued that she held "property rights in the use of the apartment and related grounds, so that [her] loss was the damage to the grounds which directly affected the apartments and the inability to use the related grounds." (Alphonso's Opposition to Respondent's Motion for Summary Judgment ("Opposition"), at 8.) She also pointed out that notwithstanding the specification in I.R.C.

6

§ 216 of only two deductions available to tenant-stockholders for the cooperative housing corporations' expenses (i.e., real estate taxes and mortgage interest), tenant-shareholders of cooperative housing corporations who meet certain residence requirements "enjoy several other homeowner-type benefits . . . not specifically enumerated in I.R.C. § 216," such as the right to deduct as qualified residence interest any interest paid on personal debt secured by their co-op shares, and the right to exclude from taxable income the first $250,000 of gain realized on the sale of such shares. (Opposition at 10-11.)

The tax court granted the Commissioner's motion for summary judgment, "reject[ing] . . . [Alphonso's] assertions regarding her alleged property interest in the common areas and the common grounds of the Castle Village complex . . . that she claims entitles her to a casualty loss deduction." 136 T.C. at 259. The court noted that §§ 165(a) and (c)(3) allow an individual taxpayer to deduct nonbusiness "losses of property . . . if such losses arise from . . . [a] casualty." 136 T.C. at 255 (internal quotation marks omitted). The court also noted that while "[g]enerally, only the owner of the property damaged by a casualty is entitled to a deduction for a casualty loss sustained to that property," id. (emphasis added), "[w]here a taxpayer has a leasehold interest in property that is damaged by a casualty, the taxpayer is entitled to deduct a casualty loss sustained to that leasehold interest. Towers v. Commissioner, 24 T.C. 199, 239, 1955 WL 562 (1955), affd. on this issue sub nom. Bonney v. Commissioner, 247 F.2d 237 (2d Cir. 1957)." 136 T.C. at 255.

The tax court ruled that Alphonso's case, however, was governed by West v. United States, 163 F.Supp. 739 (E.D. Pa. 1958) ("West"), aff'd, 259 F.2d 704 (3d Cir. 1958), in which "the taxpayer was a member of an incorporated social club (corporation)," which owned a large tract of land on which the corporation constructed a dam, creating an artificial lake, 136 T.C. at 255. The

7

members of the corporation were allowed to lease from the corporation lots on which they could build cottages; and as members of the corporation they were allowed to use the lake, see id. at 255-56 ("The lease that the taxpayer executed with the corporation gave the taxpayer only the right to use the lot. [163 F.Supp. at 741.] The taxpayer's membership in the corporation gave her (as well as the other members of that corporation) the right to use the property of the corporation, including the artificial lake."). When a hurricane destroyed the dam, and thus the lake, the corporation imposed an assessment on each member in order to pay for rebuilding the dam and restoring the lake. The West taxpayer sought a tax refund based on the availability of a casualty loss deduction for the assessment imposed on her. The tax court in the present case noted that the court in West rejected the refund claim because the proprietary lease had not granted members the right to use the lake; the taxpayer had a right to use the lake only as a member of the club. The tax court quoted the West rationale as follows:

> "Plaintiff clearly has a property interest in her leasehold and in the cottage built on it. She has no property interest, however, in the dam or lake. Her right to use corporate property comes solely and entirely from her membership. This right is conferred by the corporate charter and by-laws. Her claim to a casualty loss deduction would have more force if her rights in the lake were granted by the lease. In that case her property interest in the leasehold might well be considered to extend to an easement in the lake."

136 T.C. at 256 (quoting West, 163 F.Supp. at 741).

The tax court ruled that "the facts in the instant case are analogous to the facts in West" and required the same result. 136 T.C. 261. Having reviewed the documents submitted by Alphonso, the court stated that

> [w]e find nothing in those documents that allows us to conclude that petitioner possessed a leasehold interest, an easement, or any other property interest in

8

the Castle Village grounds that entitles her to a deduction under section 165(a) and (c)(3) for damage to those grounds.

136 T.C. at 260. The court stated that the Proprietary Lease

did not provide that Castle Village leased to petitioner any portion of the Castle Village grounds and did not provide that Castle Village granted to her any other property interest in those grounds. Although petitioner, like the other stockholders of Castle Village, had the right to use the Castle Village grounds subject to the Castle Village board house rules regarding the use of those grounds that were made part of the model proprietary lease by paragraph 13 thereof, we conclude that that lease and those rules did not grant to petitioner a leasehold interest, an easement, or any other property interest in the Castle Village grounds that entitles her to a deduction under section 165(a) and (c)(3) for damage to those grounds.

Id. (emphasis added); see also id. at 259-61 (reaching the same conclusion with respect to the Castle Village corporate charter and bylaws).

## II. DISCUSSION

On appeal, Alphonso contends that the tax court erred in ruling that she held no property interest in the Castle Village grounds sufficient to justify her claimed casualty loss deduction. She contends that the undisputed documentary evidence demonstrates that she--along with the other tenant-stockholders--possessed shared property rights in the Castle Village complex, that those rights were exclusive as against the general public, and that they constituted an equitable interest in the grounds sufficient to entitle her to the claimed casualty loss deduction.

We "review the decisions of the Tax Court . . . in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury." 26 U.S.C. § 7482(a)(1). We thus review its "legal rulings . . . de novo," Scheidelman v. Commissioner of Internal Revenue,

682 F.3d 189, 193 (2d Cir. 2012), and we "owe no deference to the Tax Court's statutory interpretations," Madison Recycling Associates v. Commissioner of Internal Revenue, 295 F.3d 280, 285 (2d Cir. 2002) (internal quotation marks omitted). Under this standard, we conclude that Alphonso held a property interest in the Castle Village grounds sufficient to entitle her to the claimed casualty loss deduction--assuming that the collapse of the retaining wall qualifies as a casualty, a matter to be determined on remand.

A. Property, Tax Deductions, and Corporations in General

Deductions under the Internal Revenue Code are a matter of "legislative grace" and are permitted "only as there is clear provision therefor." New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Section 165 of the Code provides, in general, that "[t]here shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise," I.R.C. § 165(a), but imposes limitations on the nature, see, e.g., id. § 165(c)(3), and amount, see id. § 165(h), of the deduction allowed. Subsection (c)(3) provides in pertinent part that a deduction under subsection (a) is allowed for an individual taxpayer's nonbusiness "losses of property . . . if such losses arise from fire, storm, shipwreck, or other casualty, or from theft." I.R.C. § 165(c)(3) (emphasis added).

The term "property," however, is not defined in the Code. "[I]n the application of a federal revenue act, state law controls in determining the nature of the legal interest which the taxpayer had in the property." United States v. National Bank of Commerce, 472 U.S. 713, 722 (1985) (internal quotation marks omitted).

> This follows from the fact that the federal statute creates no property rights but merely attaches consequences, federally defined, to rights created under state law. . . . And those consequences are a matter left to federal law. . . . [O]nce it has been determined that state law creates sufficient interests in the [taxpayer] to satisfy the requirements of [the statute], state law is inoperative, and the tax consequences thenceforth are dictated by federal law.

Id. (internal quotation marks omitted). "In its essence, private property is the right of a person or a defined group of persons to use a thing and to exclude others from interfering for a time long enough to extract from the thing the benefits it is capable of affording." R. Cunningham, W. Stoebuck, & D. Whitman, The Law of Property, at iii (2d ed. 1993) ("Cunningham on Property") (emphases added).

It is undisputed that, as it relates to real estate, the term "property" encompasses more than ownership in fee simple and extends to a taxpayer's leasehold interest. Thus, under the 1939 Code, which, like the current Code, allowed an individual taxpayer a deduction for nonbusiness "losses . . . not compensated for by insurance or otherwise . . . of property . . . if the loss arises from fires, storms, shipwreck, or other casualty," 26 U.S.C. § 23(e)(3) (1939), the tax court held that Bonney, "a tenant, had acquired an interest in the real estate and was entitled to the possession of the leased premises which he occupied"; that "[a]s such, he had a property interest within the meaning of section 23(e)(3) of the Code"; and that it was "clear that the property was damaged, and Bonney's interest therein, as tenant, was affected by the casualty," Towers v. Commissioner of Internal Revenue, 24 T.C. 199, 239 (1955) ("Towers"), aff'd sub nom., Bonney v. Commissioner of Internal Revenue, 247 F.2d 237 (2d Cir. 1957) ("Bonney"), cert. denied, 355 U.S. 906 (1957). The tax court in Towers ultimately rejected the tenant's claimed casualty loss deduction only because the court could not determine the "extent" of the tenant's loss, 24 T.C. at 203, 239; see id. at 239 (cost of repair did not reveal the "adjusted basis" of the damaged property). We affirmed in Bonney because,

11

although the "casualty loss affected the value of both the lessee's interest and the landlord's reversion," the loss was required to "be apportioned between them" and the evidence did not reveal the proper allocation. 247 F.2d at 238; see, e.g., New Colonial Ice Co., 292 U.S. at 440-41 (as a matter of "general policy" under the federal tax laws, deductions are not transferable but rather may be taken only by the "taxpayer who sustained the loss").

B. Cooperative Housing Corporations

The Code defines a "cooperative housing corporation" as one in which each of the stockholders is entitled by reason of his ownership of stock "to occupy for dwelling purposes a house, or an apartment in a building, owned or leased by such corporation." I.R.C. § 216(b)(1)(B). "As a general rule," because "a corporation and its stockholders are deemed separate entities," New Colonial Ice Co. 292 U.S. at 442, losses incurred by a corporation are not normally deductible by its stockholders, see, e.g., Arata v. Commissioner of Internal Revenue, 277 F.2d 576, 578 (2d Cir. 1960); Watson v. Commissioner of Internal Revenue, 124 F.2d 437, 439 (2d Cir. 1942). Section § 216(a) of the Code, however, allows tenant-stockholders to deduct their respective shares of a co-op's mortgage and real estate interest expenses. The Commissioner argues that no other deduction with respect to a co-op's expenses should be recognized because that section does not authorize deductions for any other co-op expenses. We find this argument unpersuasive. Section 216(a) does not refer to or purport to define "property"--and indeed, as Alphonso argues (see Part I.B. above), there are other provisions of the federal tax laws that treat co-op shares the same as direct fee-simple ownership of property. As we noted in Holmes v. United States, 85 F.3d 956 (2d Cir. 1996) ("Holmes"),

> [t]he shares in the [cooperative housing] corporation confer the right to occupy an apartment. And, under the Code, they also grant the shareholder many

12

other rights that are typically available only to owners of real property. Thus, the Code specifically provides that stock in a cooperative housing corporation can be defined as a principal residence for the purpose of rolling over capital gains on its sale, § 1034(f), as well as for the purpose of obtaining nonrecognition of $125,000 in capital gains on the sale of a principal residence by a taxpayer over age 55, § 121(d)(3).

85 F.3d at 960.

Under New York law, "[t]he ownership interest of a tenant-shareholder in a co-operative apartment is sui generis." State Tax Commission v. Shor, 43 N.Y.2d 151, 154, 400 N.Y.S.2d 805, 806 (1977) ("Shor"). The interest in a cooperative apartment "is represented by shares of stock, which are personal property, yet in reality what is owned is not an interest in an ongoing business enterprise, but instead a right to possess real property." In re Estate of Carmer, 71 N.Y.2d 781, 784, 570 N.Y.S.2d 88, 89 (1988) (emphasis added). Entailing both "ownership of a proprietary lease" and a "shareholder interest in the co-operative corporation," the dual interests of the tenant-shareholder "are inseparable." Shor, 43 N.Y.2d at 154, 400 N.Y.S.2d at 806. Thus, "[n]either the stock certificate nor the lease, inseparably joined, can appropriately be viewed or valued in isolation from the other." Id., 43 N.Y.2d at 157, 400 N.Y.S.2d at 808 (emphasis added).

New York's recognition of the extent and nature of property rights in co-ops "reflects the fair conduct and expectations of fair, reasonable persons." Id., 43 N.Y.2d at 159, 400 N.Y.S.2d at 809. New York law does not "ignore the manner in which economic affairs are conducted or the perception that the members of society have in conducting their affairs." Id., 43 N.Y.2d at 157, 400 N.Y.S.2d at 808.

Consistent with these principles, this Court in Holmes rejected a taxpayer's "formalistic" contention that, because co-op shares themselves cannot be "inhabit[ed]," the ownership of co-op shares is not similar to ownership of a dwelling, see 85 F.3d at 960. In Holmes, the

13

"government maintain[ed] that a co-op is a 'dwelling unit'" within the scope of I.R.C. § 280A, which limits loss deductions derived from the rental of a taxpayer's personal "dwelling unit," "even though the text of § 280A does not specifically include co-ops," 85 F.3d at 960. The government argued that within § 280A's definition of "dwelling unit" as "'a house, apartment, condominium, mobile home, boat, or similar property, and all . . . other property appurtenant to such dwelling unit,'" 85 F.3d at 959 (quoting I.R.C. § 280A(f)(1)(A)) (emphases ours), shares of a co-op constitute "similar property," 85 F.3d at 960. We upheld the government's contention, ruling that shares in a cooperative housing corporation constitute "property" indistinguishable from ownership interests in "a house, apartment, or condominium, . . . and other property appurtenant" thereto.

C. Alphonso's Interest in the Castle Village Grounds

The linchpin of the tax court's ruling against Alphonso appeared to be its finding that, as to the Castle Village grounds, Alphonso has no property interest whatever. It stated that

> [t]he model proprietary lease did not provide that Castle Village leased to petitioner any portion of the Castle Village grounds and did not provide that Castle Village granted to her any other property interest in those grounds.

136 T.C. at 260 (emphasis added); see also id. at 259 (referring to Alphonso's "alleged property interest") (emphasis added). Despite this seemingly unqualified statement that Alphonso had no property interest in the grounds, the court appeared to intimate several times that Alphonso's interest in the grounds was simply not sufficient. See, e.g., id. at 259-60 ("petitioner is wrong in asserting that she possesses a property interest in those grounds that entitles her to a casualty loss deduction for damage to those grounds") (emphases added); id. at 260 (finding that the Proprietary Lease did not grant Alphonso a leasehold or easement interest, or "any other property interest in the Castle Village

14

grounds <u>that entitles her to a deduction</u>") (emphases added); <u>id</u>. at 261 (finding that the Castle Village charter and bylaws did not grant Alphonso a leasehold or easement interest, or "<u>any other property interest</u> in the Castle Village grounds <u>that entitles her to a deduction</u>") (emphases added).

On appeal, the Commissioner's brief is similarly equivocal, arguing that Alphonso "did not have a property interest in the retaining wall and grounds of Castle Village," and that her "limited right to use the grounds[,] . . . . which she shared with all other residents of Castle Village[] was not a property right that would allow her to claim a casualty loss for damage to the grounds and retaining wall" (Commissioner's brief on appeal at 23-24). At oral argument, however, counsel for the Commissioner declined to argue that Alphonso lacks any property interest at all in the grounds, stating "[W]e're not saying she doesn't have any rights. <u>It's some form of a property right that she has in the grounds</u> . . . ." (Transcript of Oral Argument ("Tr.") at 20 (emphasis added)). Rather, the Commissioner's position is that Alphonso's property interest is not "sufficient." (<u>Id</u>. at 12, 13, 19, 21, 22.) Counsel for the Commissioner argued that, while Alphonso has a sufficient property interest in her apartment, based on her "exclusive right to" that space, her property interest in the Castle Village grounds is insufficient because "[s]he shares" the right to use those grounds "with everyone else who lives there" (<u>id</u>. 18.), a fact the Commissioner said was "determinative" (<u>id</u>.).

However, it is clear that the Commissioner does not hold fast to such a principle. His counsel conceded that, in the case of a condominium in which the tenants owned the grounds as tenants in common, casualty loss deductions for damage to the grounds would be allowed for the tenants. (Tr 19.) This concession is consistent with the general principle that the nature of a property interest depends on the nature of the rights enjoyed by "a person <u>or a defined group of persons</u>," <u>Cunningham on Property</u> at iii.

New York law recognizes that a defined group of persons may have shared interests that give each person a right to use the subject property, and indeed that a tenant-stockholder has a right to use the co-op's common areas. See Dhamoon v. 230 Park South Apartments, Inc., 48 A.D.3d 103, 107-08, 849 N.Y.S.2d 61, 64-65 (1st Dep't 2007) (enjoining enforcement of a co-op's attempt to prevent tenant-stockholder from using co-op building's lobby).

As described in Part I.B. above, Alphonso had multifaceted interests under the Proprietary Lease. She had the exclusive right to reside in the apartment represented by her shares of Castle Village stock. (Proprietary Lease at 1.) In addition, the Proprietary Lease allowed her, like all tenants, to use the Castle Village grounds. The Commissioner in his brief on appeal suggests a bifurcation in the source of Alphonso's various rights in the Castle Village property--mimicking the bifurcation that the tax court found was dispositive in West, i.e., that "[t]he lease . . . gave the taxpayer only the right to use the lot. . . . 'Her right to use [the lake] comes solely and entirely from her membership [in the corporation],'" 136 T.C. at 255-56 (quoting West, 163 F.Supp. at 741). Thus, the Commissioner argues that here "[t]he lease gave taxpayer the right to occupy the apartment" (Commissioner's brief on appeal at 5-6) and that "the 'house rules'" allowed "Castle Village stockholders" to use the Castle Village grounds (id. at 6 (emphases added)). This description is doubly flawed.

First, the Castle Village House Rules were expressly incorporated in the Proprietary Lease. (See Proprietary Lease at 8 ("The Lessor has adopted House Rules which are appended hereto . . . . This lease shall be subject to such House Rules which, when a copy thereof has been furnished to the Lessee, shall be taken to be part hereof." (emphases added)).) Thus, the Proprietary Lease is the source of both Alphonso's exclusive right to reside in her apartment and the rights spelled out in

16

the appended House Rules, including her shared right to use the Castle Village grounds. Second, there is no basis for arguing that the right to use Castle Village's grounds belongs to its stockholders qua stockholders; the House Rules, as incorporated into the Lease, identify the group of persons having the right to the "[u]se of" the Castle Village "grounds" not as stockholders but as "building residents and their guests" (Castle Village Handbook at 14).

In sum, as augmented by the appended House Rules, the Proprietary Lease in this case, unlike the lease at issue in West, gave a defined group of persons--building residents such as Alphonso--the right to use the Castle Village grounds. All of Alphonso's rights are granted by the Lease; although her right to use the grounds is not exclusive with respect to her fellow tenants, it is part of her leasehold interest. We conclude that under New York law, Alphonso's right to use the grounds, shared with other residents of Castle Village and their respective guests but not with anyone else, was a property interest in the grounds.

As Alphonso had a property interest in the grounds, § 165(c)(3)'s "property" element is satisfied.

CONCLUSION

We have considered all of the Commissioner's arguments in support of the tax court's ruling that Alphonso had no sufficient interest in "property" within the meaning of § 165(c)(3), and have found them to be without merit. For the reasons stated above, we vacate the grant of summary judgment in favor of the Commissioner and remand for further proceedings. We express no opinion as to whether Alphonso's claimed losses arose from a "casualty" within the meaning of that section.