Eris **ALVARADO,** Plaintiff,

v.

**THE CITY OF NEW YORK,** Det. Anderson Walcott, Shield No. 4940, Det. Terrence Felder, Shield No. 3632, Sgt. John Frawley, Shield No. 1415, Parole Officer Silagi, Shield No. 689, Parole Officer Almenas, Shield No. 510, Parole Officer E. Green, Individually and in their Official Capacities, and P.O.s "John Doe" # 1–10, Individually and in their Official Capacities, Defendants.

No. 04 Civ. 8073(VM).

United States District Court, S.D. New York.

March 26, 2007.

4940, Det. Terrence Felder, Shield No. 3632, John Frawley Sgt., Shield No. 1415, Parole Officer Silagi, Shield 689.

John Eric Knudsen, New York State Department of Law (EPB), Albany, NY, for Almenas Parole Officer, Shield No. 510, Parole Officer E. Green, Shield No. Unknown.

## DECISION AND ORDER

MARRERO, District Judge.

Plaintiff Eris Alvarado ("Alvarado") filed a complaint, dated October 4, 2004 (the "Complaint" or "Compl."), alleging various causes of action under 42 U.S.C. § 1983 (" § 1983") against defendants. Defendants Eunice Green ("Green"), Thomas Silagi ("Silagi") and Arcadio Almenas ("Almenas"), all employees of the New York State Division of Parole ("DOP")(collectively, the "Defendants"),[1] now move for summary judgment, in whole or in part, dismissing the claims against them. For the reasons discussed below, Defendants' motion is GRANTED IN PART and DENIED IN PART.

## I. BACKGROUND [2]

Alvardo was released on parole supervision in December, 1999. An arrest in 2000 and again in 2001 resulted in modifications to Alvarado's parole but did not result in a parole warrant or any attempt to revoke Alvarado's parole. In or about September 2002, Alvarado was indicted and arrested on charges relating to a robbery at a bodega, in which it was also alleged that Alvarado and an accomplice threatened and assaulted a worker. Alvarado was released on bail shortly after his arrest.

Jon Louis Norinsberg, Law Offices Of Jon L. Norinsberg, New York, NY, for Eris Alvarado.

Phillip C. Kim, The Rosen Law Firm, P.A., New York, NY, for City of New York.

John Eric Knudsen, New York State Department of Law (EPB), Albany, NY, for Anderson Walcott, Det. Shield No.

1. All other defendants—the City of New York and city employees—have been dismissed from this case due to settlement.

2. The factual summary below derives from the following documents: Declaration of John Knudsen, dated July 28, 2006 ("Knudsen Decl."); Declaration of Jon L. Norinsberg, dated October 13, 2006 ("Norinsberg Decl."); and from the affidavits, DOP records, deposition transcripts, and additional documents cited therein. Except where specifically referenced, no further citation to these sources will be made.

Subsequent to the indictment, the DOP considered whether to revoke Alvarado's parole. A "Violation of Release Report" was issued on November 5, 2002 indicating that the conduct alleged in the robbery indictment violated his conditions of release. However, a determination was made not to initiate parole revocation proceedings against Alvarado at that time. (*See* Knudsen Decl., Ex. I at PAROLE 10 ("We are requesting no Delinquency Date pending court action.")) The report noted, however, "We will clearly monitor subject and continue to investigate this arrest." (*Id.*)

On November 18, 2002 Alvarado reported to the DOP and advised that he was moving to a new location, where he would be renting out a single room in another individual's apartment. That same evening Defendants conducted a search of Alvarado's new residence. Alvarado was present during the search. In the course of the search, Defendants found three impulse sealers, 1780 small plastic bags, 17 larger plastic bags and a utility knife. One of the impulse sealers was found in the bedroom of the apartment, which was allegedly Alvarado's room. The Defendants believed these items to be of the kind typically used in the distribution of illegal narcotics. Consequently, on November 25, 2002, the DOP issued a "First Supplementary Violation of Release Report," setting forth the "additional charges" that Alvarado had violated his parole as a result of his possession of "drug paraphernalia." (*Id.* at PAROLE 108.) That same day a parole arrest warrant was issued and Alvarado was taken into custody at the DOP office.

Alvarado contends that he was never in possession of the alleged drug paraphernalia as he had not yet even moved into the apartment and was still unpacking when Defendants arrived on the premises and conducted the search.

Additionally, Alvarado maintains that upon arrest he was told to sign certain documents without having them fully explained to him. One of the documents he signed was a "Notice of Violation," which includes a section where Alvardo could choose to waive a preliminary hearing on the parole violation charges against him. Alvarado asserts that he had never before been arrested for a parole violation and was not aware he was even entitled to a preliminary hearing. Significantly, there is a box on the Notice of Violation, directly above where Alvarado signed, which states "I do NOT wish to have a preliminary hearing." (*Id.* at PAROLE 107.) This box is not checked on Alvarado's waiver.

After several adjournments, Alvarado's final hearing on his alleged parole violation concluded on March 14, 2003. At the hearing, the DOP withdrew the charges against Alvarado and consequently, on March 18, 2003, the hearing officer held the charges could not be sustained and Alvarado was released from custody. According to Defendants, the reason for withdrawal of Charges 1 and 2 relating to the robbery indictment was that the witness who identified Alvarado as a participant in the robbery refused to cooperate. With respect to Charge 3 for possession of drug paraphernalia, this charge was withdrawn due to the parole revocation specialists conclusion that the items seized "are not illegal and cannot be considered as drug paraphernalia." (*Id.* at PAROLE 18.)

Alvarado subsequently brought the instant action, asserting various claims pursuant to § 1983, including unlawful search and seizure, false arrest, malicious prosecution, malicious abuse of process, and denial of due process.[3] In support of his

---

**3.** The Complaint asserts a cause of action for "deprivation of federal civil rights" under

§ 1983, in addition to separate § 1983 claims

claims, Alvarado argues that his parole arrest was based solely on his alleged possession of drug paraphernalia, which the DOP later conceded was not an adequate basis for finding a parole violation. Moreover, Alvarado argues that the property searched was not even under his control as he had not moved in to the apartment as of the time of the search. Finally, Alvarado asserts that he has a viable due process claim as result of being deprived of the right to a preliminary hearing.

Defendants contend that Alvarado's claims fail because regardless of the viability of the drug paraphernalia charge, Defendants had probable cause to arrest Alvarado based on the robbery indictment. Moreover, Defendants argue that Alvarado's claims must fail because as state law enforcement officials, they are entitled to qualified immunity. Finally, Defendants emphasize that Alvarado knowingly signed the preliminary hearing waiver form, and although represented by counsel at each adjournment of the final hearing, Alvarado never asserted that he was denied a preliminary hearing.

## II. *DISCUSSION*

### A. *STANDARD OF REVIEW*

The Court may not grant summary judgment "unless there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Island Software and Computer Service, Inc. v. Microsoft Corp.*, 413 F.3d 257, 260 (2d Cir.2005) (citing Fed.R.Civ.P. 56(c)). In determining whether any genuine issues of material fact exist that would preclude summary judgment, the Court must "draw all permissible inferences in favor of the non-moving party." *Kapps v. Wing*, 404 F.3d 105, 112 (2d Cir.2005).

The Court does not, however, defer to a party's legal arguments on summary judgment; "with respect to a motion for summary judgment, questions of law are for the court." *Ying Jing Gan v. City of New York*, 996 F.2d 522, 534 (2d Cir.1993).

In this action, Defendants, acting in their official capacity as state parole officers, correctly argue that they are entitled to qualified immunity. Under this doctrine, "a government official performing discretionary functions is shielded from liability for civil damages if his conduct did not violate plaintiff's clearly established rights or if it would have been objectively reasonable for the official to believe that his conduct did not violate plaintiff's rights." *Savino v. The City of New York*, 331 F.3d 63, 71 (2d Cir.2003). Thus, summary judgment is warranted unless Alvarado "has submitted evidence sufficient to establish that objectively reasonable persons in the defendants' position would have known that their conduct violated [Alvarado's] rights." *Id.*

### A. *THE SEARCH*

█ The Court will first address Alvarado's assertion that the search that lead to the discovery of the alleged drug paraphernalia was unlawful under the DOP's own regulations and a Fourth Amendment violation because Alvarado was not in control of the premises.

As a condition of his parole, Alvarado expressly consented to searches of his premises and property. (*See* Knudsen Decl., Ex. I at PAROLE 54, Condition of Release 4 ("I will permit my Parole Officer to visit me at my residence and/or place of employment and I will permit the search and inspection of my person, residence and

---

for false arrest, malicious prosecution and malicious abuse of process. Although the parties' briefs at times address the search and due process violations within the context of

the other claims, the Court construes the Complaint and Alvarado's brief as asserting separate constitutional claims relating to both the search and alleged due process violations.

property.")). Nevertheless, New York has generally required that in order to avoid "constitutional proscription," any search of a parolee must be "rationally and reasonably related to the performance of the parole officer's duty." *United States v. Grimes,* 225 F.3d 254, 258–59 (2d Cir.2000) (citations omitted).

In light of the Supreme Court's recent decision in *Samson v. California,* —— U.S. ——, 126 S.Ct. 2193, 165 L.Ed.2d 250 (2006), even a suspicionless search of a parolee may not be a Fourth Amendment violation. *See Id.* at 2199 ("Examining the totality of the circumstances pertaining to petitioner's status as a parolee, an established variation on imprisonment, including the plain terms of the parole search condition, we conclude petitioner did not have an expectation of privacy that society would recognize as legitimate."). *Samson* specifically addressed a California parole statute that explicitly allowed for a search without cause by a parole officer. *See id.* at 2196. New York does not have an analogous provision. To resolve the claims currently before the Court, however, it is not necessary to decide whether the "features of new York's parole landscape mean that New York allows the sort of suspicionless search of parolees that California does." *Gathers v. White,* No. 04–cv–5454, 2007 WL 446755, at *4 (E.D.N.Y. Feb.8, 2007). It is sufficient to note that Alvarado's "acceptance of a clear and unambiguous search condition significantly diminishes [Alvarado's] reasonable expectation of privacy." *Samson,* 126 S.Ct. at 2199.

Regardless of this diminished expectation of privacy, it appears the search was rationally and reasonably related to the Defendants' duties as parole officers. A parole officer has a duty to "investigate whether a parolee is violating the conditions of his parole—one of which, of course, is that the parolee commit no further crimes—when the possibility of violation is brought to the officers attention." *United States v. Reyes,* 283 F.3d 446, 459 (2d Cir.2002) (citations omitted). Defendants, in light of Alvarado's robbery indictment, had reason to believe that there was a possibility of violation of Alvarado's parole. Moreover, it appears Defendants had reason to believe a firearm used in the robbery might be located at the premises. (*See* Declaration of Thomas Silagi, dated July 28, 2006 ("Silagi Decl.") at ¶ 1, attached as Ex. A to Knudsen Decl.).

Alvardo's assertion that he was not in control of the premises is undercut by the fact that the Defendants were there because Alvarado informed them that he was to be living at these premises. It is undisputed that Alvarado was in the process of moving in but he asserts that he had yet to unpack and the alleged drug paraphernalia did not belong to him. Whether or not the items belonged to him or his roommate, they were found in the living room and in the bedroom that Alvardo indicated he was occupying. As Defendants point out, there was no clear demarcation in the apartment between Alvarado's possessions and his roommate's. Thus, whether or not he was in "possession" of the alleged drug paraphernalia, it is clear that the premises were sufficiently under his "control."

Alvardo argues that the search by Defendants violated their own policies and procedures, but the relevant language governing the search of premises states that "[a]n Officer may search, or direct the search of premises under a releasee's control." (*See* Norinsberg Decl., Ex. J, DOP Policies and Procedures Manual.) Here, while a factual dispute exists as to whether the alleged drug paraphernalia belonged to Alvarado or was there before he even moved in, it was not unreasonable for the Defendants to believe the premises were under Alvarado's control. Thus, under the circumstances, it cannot be said that an

objectively reasonable person would have known that the search violated Alvarado's rights, thus Defendants' qualified immunity bars Alvarado's claim.

### B. *THE ARREST AND PROSECUTION*

#### 1. *False Arrest*

To state a claim for false arrest under New York law, Alvarado must show that "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Savino,* 331 F.3d at 75. The confinement is privileged and a false arrest claim may not be maintained if there was probable cause for the arrest. *See Kent v. Katz,* 312 F.3d 568, 573 (2d Cir.2002) (*citing Singer v. Fulton County Sheriff,* 63 F.3d 110, 118 (2d Cir.1995) ("There can be no federal civil rights claim for false arrest where the arresting officer had probable cause.")). A finding of probable cause may be based on the "totality of the circumstances ... and may exist even when it is based on mistaken information, so long as the arresting officer acted reasonably and in good faith in relying on that information." *Bernard v. United States,* 25 F.3d 98, 102 (2d Cir.1994).

■ However, "[w]hen a parolee is involved, the lower 'reasonable cause' standard is in place." *Gathers,* 2007 WL 446755, at *4. New York's parole regulations state that:

A warrant for retaking and temporary detention may issue when there is a reasonable cause to believe that the releasee has lapsed into criminal ways or company, or has violated the conditions of his release in an important respect. Reasonable cause exists when evidence or information which appears reliable discloses facts or circumstances that would convince a person of ordinary intelligence, judgment and experience that it is reasonably likely that a releasee has committed the acts in question or has lapsed into criminal ways or company. 9 N.Y.C.R.R. 8004.2(c).

Here, "no reasonable jury could find an absence of reasonable cause to believe that [Alvarado] had lapsed into criminal ways prior to his arrest. Indeed, no jury could find an absence of probable cause for the arrest." *Gathers,* 2007 WL 446755 at *5. It is undisputed that Alvarado was indicted by a grand jury for robbery. Alvarado does not appear to dispute that the indictment for robbery would ordinarily provide Defendants sufficient reasonable cause to support his arrest. Alvarado instead argues that because Defendants chose not to arrest him immediately after the robbery indictment, his parole violation arrest and resultant loss of liberty was due solely to the alleged possession of drug paraphernalia. As the DOP concluded that the items recovered by Defendants were not illegal and could not be construed as drug paraphernalia, Alvarado maintains his arrest clearly lacked probable cause.

The Court finds Alvarado's argument factually flawed and without any legal support. Had Defendants not searched his apartment, they would nonetheless have had reasonable cause to arrest Alvarado on the pending robbery charges. The fact that the arrest[1] appears to have been prompted by the additional discovery of alleged drug paraphernalia that was later determined to be insufficient on its own to support a parole violation finding does not negate the relevance of the robbery charges as sufficient independent grounds for the arrest. When the DOP issued its initial Violation of Release Report on November 5, 2005 deciding not to take action, it did not waive the right to arrest Alvarado based on the parole violations charged in that report. Notably, that report indi-

cated that the DOP would continue to monitor Alvarado and investigate the arrest. Moreover, the First Supplementary Violation of Release Report cites the drug paraphernalia as an "additional charge," and as the title of the report plainly states, it *supplements* the Violation of Release Report. Thus, the arrest warrant requested is clearly based on all three charges (the two related to the robbery and the one related to drug paraphernalia). Alvarado cites no authority to support his assertion that in deciding not to arrest him based solely on the robbery charges, that Defendants waived the right to rely on those charges to support a finding of reasonable cause.

Additionally, considering the "totality of the circumstances," *Bernard,* 25 F.3d at 102, the robbery indictment in conjunction with what Defendants deemed at the very least to be suspicious property at Alvarado's new premises, constituted sufficient reasonable cause for the parole officer Defendants to believe that Alvarado had "lapsed into criminal ways or company." 9 N.Y.C.R.R. 8004.2(c).

Alternatively, Defendants' qualified immunity bars Alvarado's false arrest claim as the circumstances that lead to Alvarado's arrest cannot be said to be such that an objectively reasonable person would have known that they were violating Alvarado's rights.

### 2. *Malicious Prosecution*

■ For these same reasons, Alvarado's claim for malicious prosecution must fail. Under New York Law, "the existence of probable cause is a complete defense to a claim of malicious prosecution." *Savino,* 331 F.3d at 72. A grand jury indictment creates "a presumption of probable cause"

on a malicious prosecution claim that "may only be rebutted by evidence of fraud, perjury, suppression of evidence or other police conduct undertaken in bad faith." *Id.* Here, Alvarado's complaint lacks any allegations of fraud or other bad faith conduct and Alvarado points to no evidence to the contrary in connection with this motion. Moreover, the Complaint lacks any allegations that defendants were motivated by malice, which is a necessary element of a malicious prosecution claim under New York law. *See Gathers,* 2007 WL 446755 at *5.

### 3. *Malicious Abuse of Process*

A malicious abuse of process claim requires that "defendant (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm and without excuse of justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Savino,* 331 F.3d at 76. (citations omitted). Alvarado fails to produce any evidence to raise a genuine issue of material fact to support his claim that his arrest and prosecution by Defendants manifested intent to do harm or in order to obtain some impermissible collateral objective. Thus, this claim fails as well.

### C. *DENIAL OF DUE PROCESS*

■ Whether or not the arrest was improper or the prosecution malicious, Alvarado claims that he was denied a preliminary hearing in violation of his due process rights.[4] Alvarado asserts that he was told to sign the Notice of Violation form waiving his right to a preliminary hearing without having it explained to him and without

---

4. Under established law, a parolee is entitled "to two hearings: (1) a preliminary hearing on whether there was probable cause for the violation-of-parole charge, and (2) a final

hearing on whether he was actually guilty of violating his parole." *Calhoun v. New York State Division of Parole,* 999 F.2d 647, 650 (2d Cir.1993).

understanding that he was waiving any such right. Although he signed the form, he did not check the box on it indicating that he did not want a preliminary hearing.

██ Under New York law, the waiver of a preliminary hearing must be made "knowingly, intelligently and voluntarily." *Matter of White v. New York State Div. of Parole,* 60 N.Y.2d 920, 922, 470 N.Y.S.2d 581, 458 N.E.2d 1258 (1983). A waiver, "particularly of a constitutionally guaranteed due process entitlement such as the one here at issue, will not in the first instance be presumed, and it is accordingly the proponent of the waiver who must initially establish that the waiver was in fact made. This is usually done by adducing a writing clearly and unambiguously documenting the individual's intention to relinquish his or her right." *People ex rel. Melendez v. Warden, Rikers Island Corr. Facility,* 214 A.D.2d 301, 624 N.Y.S.2d 580 (App.Div. 1st Dept.1995)(internal citations omitted).

Here, there is a writing signed by Alvarado indicating a waiver of the preliminary hearing. It is also signed by Defendant Silagi, who has submitted an affidavit indicating that although he has no independent recollection of doing so, it was his typical practice to explain the purpose of the preliminary hearing, and if waived, to subscribe the word "waived" on the top of the form, which he did here. (*See* Silagi Decl., ¶ 3.) However, there is also Alvarado's deposition testimony that the Notice of Violation form was not explained to him before he signed it. (*See* Alvarado Dep. at 64.) While Alvarado acknowledges not reading the form, he asserts that he was nervous at the time and handcuffed. (*See Id.* at 63–64.) Moreover, he states that he had never gone through this process before and that he did not know what was supposed to happen. (*See Id.*) In addition to these competing affidavits, there is the undisputed fact that the box indicating a

waiver was not checked. The question is whether sufficient ambiguity exists under these circumstances to make summary judgment inappropriate on this issue. The Court believes it does.

In *Melendez,* both the box indicating that the defendant wished to have a preliminary hearing and the adjacent box indicating he wished to waive it were checked. *See Melendez,* 624 N.Y.S.2d at 581. Although there appeared to be a cross over the hearing request and a circle around the waiver, neither of those marks were initialed. Thus, the court concluded there was not adequate prima facie evidence of a waiver. Similar ambiguity exists here as the unchecked box right above where Alvarado signed creates sufficient ambiguity as to whether Alvarado's waiver was knowing, voluntary and intelligent. *Cf. People ex rel. Baker v. Warden, Rikers Island Corr. Facility,* 17 A.D.3d 266, 793 N.Y.S.2d 405, 405 (App.Div. 1st Dept.2005) ("It is clear from the record that the petitioner knowingly, voluntarily and intelligently waived his right to a preliminary parole revocation hearing when he subscribed his name to a handwritten notation on a court form stating: 'I hereby wish to waive my preliminary hearing.'"); *People ex rel. Adams v. Warden, Rikers,* 801 N.Y.S.2d 779, 780 (Sup.Ct., Bx.Co.2005) (finding a valid waiver of a preliminary hearing as the Notice of Violation "contained no contradictory, inconclusive, confusing or unexplained amendments, edits and/or changes....").

Defendants argue that Alvarado waived any claim over the lack of a preliminary hearing because Alvardo had several opportunities to raise this issue during three separate final revocation proceedings but failed to do so, despite being represented by counsel. It is true that the failure to make certain objections at a final hearing means those objections may not be pre-

served for subsequent review in habeas corpus proceedings. *See In re Stanbridge v. Hammock,* 55 N.Y.2d 661, 661, 446 N.Y.S.2d 929, 431 N.E.2d 290 (1981); *People ex rel. Williams v. Allard,* 19 A.D.3d 890, 798 N.Y.S.2d 153, 153 (App.Div.3d Dept.2005). However, that proposition does not extend to support a waiver of a § 1983 claim alleging a constitutional due process violation by failing to raise it in the parole violation hearing, particularly when the violation and resulting harm has already occurred by the time the final hearing began. Alvarado had already been incarcerated for several weeks at the time the final hearing commenced.

"Due process requires, as a general matter, an opportunity to be heard at a meaningful time and in a meaningful manner. In the ordinary parole-revocation case, New York does provide an adequate opportunity to be heard. First, providing the preliminary hearing assures that a declaration of delinquency ... will not occur without at least a finding of probable cause." *Calhoun,* 999 F.2d at 653. Alvarado did not have a preliminary hearing, and on the record before it the Court is unable to find that there is no genuine issue of material fact as to whether Alvarado knowingly, intelligently and voluntarily waived this important right.

Finally, Defendants' qualified immunity does not protect them from this claim. If in fact Defendants procured Alvarado's signature with knowledge that Alvarado had not knowingly, intelligently and voluntarily wished to waive a preliminary hearing, they arguably violated a clearly established right. To be clearly established, "the contours of the right claimed to have been violated must be sufficiently clear that a reasonable official would understand what he is doing violates that right." *Parker v. Chin,* No. 04–cv–3901, 2006 WL 1379613, at *5 (S.D.N.Y.2006) (*citing Anderson v. Creighton,* 483 U.S. 635, 640,

107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). A reasonable parole official knows that an arrested parolee has a right to a preliminary hearing and denying that clearly established right by procuring an uninformed waiver would not be objectively reasonable. Thus, the Court concludes that this claim cannot be dismissed on the grounds of qualified immunity.

## III. *ORDER*

For the reasons stated above, it is hereby

**ORDERED** that the motion for summary judgment (Docket No. 26) of Eunice Green, Thomas Silagi and Arcadio Almenas, all employees of the New York State Division of Parole ("DOP")(collectively, the "Defendants"), is GRANTED IN PART to the extent that the claims of plaintiff Eris Alvarado ("Alvarado") pursuant to 42 U.S.C. § 1983 for unreasonable search and seizure in violation of the Fourth Amendment, false arrest, malicious prosecution, and malicious abuse of process are dismissed; and DENIED IN PART to the extent that Alvarado's 42 U.S.C. § 1983 claim alleging denial of due process is sustained; and it is further

**ORDERED** that the parties are directed to appear before the Court on April 13, 2007 at 10:45 a.m. to address remaining pretrial proceedings in this action.

**SO ORDERED.**